UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARLA M. WALKER, individually, as guardian ad litem for ANDRE HENRY, Jr., and as successor in interest of ANDRE HENRY, Sr., deceased, CRYSTAL HENRY, and ANDRE HENRY, Jr., as individuals and successors in interest,<br><br>Plaintiffs,<br><br>v.<br><br>FRESNO POLICE DEPARTMENT, et al.,<br><br>Defendants. | 1:09-CV-1037 OWW GSA<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS (Doc. 14) |

## I. INTRODUCTION

Plaintiffs, Sharla M. Walker, individually and as guardian ad litem for Andre Henry, Jr. and successor in interest of Andre Henry, Sr., deceased, Crystal Henry, and Andre Henry, Jr., as individuals and successors in interest (hereinafter "Plaintiffs"), initially filed this lawsuit in Fresno County Superior Court on February 26, 2009. Original Complaint, Doc. 2, at 3. On June 12, 2009, Defendants, the Fresno Police Department ("FPD") and individual FPD Officers Martin and Godwin, removed the action pursuant to Title 28 United States Code, sections 1331 and 1441(b), because the complaint contains numerous federal claims. *See* Doc. 2. On September 4, 2009, Plaintiffs' filed a First Amended Complaint ("FAC"). Doc. 11.

1

Before the court for decision is Defendants' motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 15. Plaintiffs concede dismissal as to one aspect of the complaint, but oppose as to all others. Doc. 19. Defendants filed a reply. Doc. 20. Oral argument was heard February 8, 2010.

## II. BACKGROUND

Plaintiffs allege that on or about January 10, 2008, Defendants served a search warrant at Sharla Walker's residence. FAC ¶6. The Officers "detained and physically restrained" Andre Henry, Sr., Sharla Walker's son and the father of Andre Henry, Jr. and Crystal Henry. *Id*. It is alleged that during the detention, Andre Henry, Sr. "complained that he did not feel well and requested emergency medical attention." *Id*. Instead of providing medical attention, Plaintiffs allege that the defendant officers "mocked and ridiculed" Andre Henry, Sr. FAC ¶7.

Sharla Walker was contacted by family members about the detention, her son's alleged need for medical care, the denial of his requests for care, and the officers' mocking and ridicule. FAC ¶7. She attempted to reach her son on his cell phone, but the defendant officers answered the phone without identifying themselves and then hung up. FAC ¶8. Plaintiffs allege that the officers similarly thwarted Sharla Walker's attempts to reach her son on the home's landline phone. *Id*. Additionally, when calls

2

were made to the home's landline phone, the Officers "sometimes before hanging up ... falsely told the caller that they (the officers) were Sharla M. Walker's mother." *Id*.

Plaintiffs allege that as a result of the defendant officers' "refusal to allow Andre Henry, Sr. access to emergency medical services, Andre Henry, Sr. died." FAC ¶9.

The FAC sets forth four claims for relief. The first, brought pursuant to Title 42 United States Code, section 1983 ("Section 1983") by all Plaintiffs against all Defendants, alleges that Andre Walker, Sr.'s death was "the result of the deprivation of his 4th Amendment right to be free from unreasonable seizure and excessive force." FAC ¶12. Plaintiffs also allege the death "constituted a violation of plaintiffs' personal 14th Amendment substantive due process rights as the children and parent of Andre Henry, Sr." FAC ¶13.

The Second Claim for Relief, brought by Sharla Walker against all defendants pursuant to Section 1983 alleges that "the unreasonable conduct" of the defendant officers "in connection with the telephone calls made" by Mrs. Walker constituted a violation of her substantive due process rights to familial association. FAC ¶16.

The Third Claim for Relief, brought under Section 1983 by all Plaintiffs against all defendants as a "survival action" based on their status as "successors in interest," alleges that

decedent's demise "was the result of the deprivation of his 4th Amendment right to be free from unreasonable seizure and excessive force." FAC ¶¶ 20, 22.

The Fourth Claim for Relief, a state law negligence claim brought by Sharla Walker against all defendants, alleges that defendant officers "negligently responded to and/or terminated the telephone calls" she made, and that as a result she "suffered panic and frustration, along with the severe and extreme emotional distress and mental upset, anguish, pain and suffering to be expected to naturally attend such panic and frustration." FAC ¶25. It is also alleged that Defendant City of Fresno is vicariously liable for the alleged negligence of the defendant officers. FAC ¶26.

The Fifth Claim for Relief, a state law intentional infliction of emotional distress claim brought by Sharla Walker against all defendants, alleges that the conduct of the individual defendants in terminating her phone calls was "extreme and outrageous," and was done with the intention of causing her emotional distress," or with reckless disregard of this possibility. FAC ¶29.

### III. STANDARD OF DECISION

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*,

4

901 F.2d 696, 699 (9th Cir. 1990). To sufficiently state a claim to relief, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted). The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a [pleading] to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

### IV. DISCUSSION

**A.   First Claim For Relief -- Substantive Due Process Claim Based on Death of Decedent.**

The Fourteenth Amendment to the United States Constitution prohibits a state from depriving any person of "life, liberty, or

5

property, without due process of law." A family member may assert a Fourteenth Amendment claim "based on the related deprivation of their liberty interest arising out of their relationship with [a decedent]." *Moreland v. Las Vegas Metro. Police Dept.*, 159 F.3d 365, 371 (9th Cir. 1998). "This substantive due process claim may be asserted by both the parents and children of a person killed by law enforcement officers." *Id.*

An allegation of failure to provide medical care to a person arrested for a crime, though not yet convicted, is analyzed under the due process clause of the Fourteenth Amendment. *Lolli v. County of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003). In the Ninth Circuit, such an individual is entitled to due process rights at least as great as the Eighth Amendment protections afforded convicted prisoners:

> Pretrial detainees, whether or not they have been declared unfit to proceed, have not been convicted of any crime. Therefore, constitutional questions regarding the conditions and circumstances of their confinement are properly addressed under the due process clause of the Fourteenth Amendment, rather than under the Eighth Amendment's protection against cruel and unusual punishment. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Bell v. Wolfish*, 441 U.S. 520, 535 & n. 16 (1979); *see also Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002). In light of the Supreme Court's observation that the due process rights of pretrial detainees are "at least as great as the Eighth Amendment protections available to a convicted prisoner," *Revere*, 463 U.S. at 244, we have recognized that, even though the pretrial detainees' rights arise under the Due Process Clause, the guarantees of the Eighth Amendment provide a <u>minimum standard of care for determining their rights</u>, including the rights to medical and psychiatric care. *Gibson*, 290 F.3d at 1187; *Carnell v. Grimm*, 74 F.3d

6

977, 979 (9th Cir. 1996); *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986).

*Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003).

Presently, although Plaintiffs do not waive the right to assert a higher standard of care at a later stage of the litigation, Plaintiffs maintain that the FAC adequately states a claim under the Eighth Amendment standard. Doc. 19 at 4. Under that standard, "persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)(internal citation and quotation omitted). Under the deliberate indifference standard, "a person is liable for denying a prisoner needed medical care only if the person knows of and disregards an excessive risk to inmate health and safety." *Id*. "In order to know of the excessive risk, it is not enough that the person merely be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, [ ] he must also draw that inference." *Id*. "If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk." *Id*. "But if a person is aware of a substantial risk of serious harm, a person may be liable for neglecting a prisoner's serious medical needs on the basis of either his action or his inaction." *Id*.

Defendants argue that there are no facts in the FAC

indicating deliberate indifference on the part of the individual defendants. Doc. 15 at 4. Therefore, they argue, "there is no indication that the individual defendants knew of the particular risk involved" and/or "consciously disregarded the risk." *Id*.

Plaintiffs cite *Jett v. Penner*, 439 F.3d 1091 (2006), which explains:

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a "serious medical need" by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong- defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Yet, an inadvertent or negligent failure to provide adequate medical care alone does not state a claim under § 1983.

*Id*. at 1095 (internal citations and quotations omitted).

Here, the FAC alleges that, while being physically restrained in his mother's residence, Andre Henry, Sr. complained of illness and requested emergency medical care. FAC ¶6. The FAC further alleges that Defendants ignored decedents request for medical attention, as well as his family's attempts to intercede, and that this failure to provide care to Mr. Henry, Sr. resulted in his death. FAC ¶¶ 7-9.

Post-*Iqbal*, a deliberate indifference allegation will not

8

survive a 12(b)(6) motion if it contains only "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements...." *Latimer v. Kolender*, 2009 WL 4156714, *3 (C.D. Cal. Nov. 23, 2009) (quoting *Iqbal*, 129, S. Ct. at 1949). For example, in *Brown v. Lewis*, 2009 WL 1530681 (E.D. Cal. Jun. 1, 2009), plaintiff alleged that he became ill during a morning workout and complained to a medical technician "that he had difficulty breathing, was light-headed and was unable to stand." *Id*. at *1. The technician diagnosed him with heat exhaustion and instructed him to cease strenuous activity and drink more water. *Id*. Plaintiff alleged that he had actually suffered a heart attack, and claimed that the technician demonstrated deliberate indifference to his serious medical needs in failing to diagnose and treat him for heart attack at that time. *Id.* This allegation was insufficient under *Iqbal*, because plaintiff "must show that [defendant] knew of or disregarded an excessive risk to [plaintiff's] health." *Id*. To do so, the complaint must contain more than "conclusory allegations to the effect that defendant knew that [plaintiff] had a heart attack.... [Plaintiff] must allege specific facts 'plausibly showing' that defendant had the requisite mental state." *Id*.

Here, apart from alleging that decedent complained that he was feeling ill and requested emergency medical care, Plaintiffs do not allege any specific physical complaints or symptoms that

9

were explicitly described to or that should have been apparent to either of the Officers to inform them of a serious medical need that they ignored. This is insufficient under *Iqbal*. Plaintiff has requested and shall be afforded an opportunity to amend.

Defendants' motion to dismiss the Fourteenth Amendment claim based upon allegedly insufficient medical care is GRANTED WITH LEAVE TO AMEND.

B.  <u>Second Claim for Relief -- Plaintiff, Sharla Walker's Fourteenth Amendment Loss of Familial Association Claim for Being Deprived of Phone Contact.</u>

The Supreme Court has recognized that the right to intimate familial relationships is protected by the Fourteenth Amendment. *See Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984). However, an individual defendant can only be held liable if he or she acted with "deliberate indifference" to the plaintiff's right of familial relationship and society. *Byrd v. Guess*, 137 F.3d 1126, 1134 (9th Cir. 1998), abrogated by statute on other grounds.[1]

Application of the "deliberate indifference" standard to Fourteenth Amendment familial association claims was reaffirmed

---

[1] Defendants' assertion that *Byrd* requires application of a "reckless disregard" standard is not directly supported by the text of that decision. *Id.* at 1134 ("To prove their Fourteenth Amendment claim, the Byrds had to prove that the Officers acted with deliberate indifference to the Byrds' rights of familial relationship and society by using excessive force against [their son]."). However, the Ninth Circuit has subsequently interpreted the "deliberate indifference" test articulated in Byrd as synonymous with "reckless disregard." *See Perez v. City of Los Angeles*, 98 Fed. Appx. 703, 706 (9th Cir. 2004) (Table).

10

in *Lee v. City of Los Angeles*, 250 F.3d 668 (2001), where the Ninth Circuit found that plaintiffs stated a cause of action by alleging "reckless, intentional and deliberate acts and omissions of defendants," constituting an "unwarranted interference" with the rights of family members. *Id*. at 685-86. Under *Iqbal*, such conclusory statements must be supported by plausible factual allegations.

Here, Defendants argue that decedent was being detained pursuant to a search warrant, and "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Michigan v. Summers,* 452 U.S. 692, 702-703 (1981). Therefore, their argument continues, to limit possible unwarranted intrusion, it was reasonable for the officers to cut off incoming phone calls to the area being searched.[2]

---

[2] Defendants also argue that familial association cases emphasize the necessity of a permanent, physical loss of association, citing *Pittsley v. Warish*, 927 F.2d 3, 8 (1st Cir. 1991) and *Tennenbaum v. Williams*, 193 F.3d 581, 600-01 (2nd Cir. 1999). The First Circuit observed, that it has "never held that governmental action that affects the parental relationship only incidentally ... is susceptible to challenge for a violation of due process." *Ortiz v. Burgos*, 807 F.2d 6, 8 (1st Cir. 1986).
However, as noted in *Trevino v. Lassen Municipal Utility District*, 2008 WL 134063, *4 n.6 (E.D. Cal. Apr. 9, 2008):

> There is nothing in [the applicable Supreme Court and Ninth Circuit] cases that suggests that this cause of action is only available when the plaintiff has been completely deprived of the companionship of the family member, for example, through death or legal termination of the relationship. *See Smith [v. City of Fontana]*, 818 F.2d

11

This is a close call. Was it reasonable for the Officers to answer the calls and then hang up? Why, if incoming calls were a security concern, did they answer them at all? However, it is Plaintiffs' burden, under *Iqbal*, to allege facts that plausibly suggest any interference with familial association was unwarranted. They have failed to do so. The motion to dismiss is GRANTED WITH LEAVE TO AMEND to permit Plaintiffs an opportunity to more clearly articulate the circumstances surrounding the Officers' conduct

**C.  Third Claim for Relief -- Fourth Amendment Survival Action.**

**1.  Sharla Walker Lacks Standing to Bring this Claim.**

Plaintiffs concede that Sharla Walker, as decedent's mother, does not have standing to pursue a Fourth Amendment survivor action. "Fourth Amendment rights are personal rights which ... may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). However, the survivors of an individual

---

[1411,] 1418-19 [(9th Cir. 1987)] (characterizing the claim as the state's "interference with" family relations; also relying on *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), which had held that parents' liberty rights were infringed upon by a state regulation that required children to be educated in public schools). <u>Although the nature and irreversibility of the interference may be relevant to a factfinder's determination of what damages may be appropriate, it does not appear dispositive for the question of whether the claim is cognizable</u>.

(Emphasis added.)  Although no familial association cases brought similar factual scenarios could be located, *Trevino* reasonably suggests that an allegation of temporary deprivation is not automatically barred

12

killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf under Section 1983 if the relevant state's law authorizes a survival action. *Smith v. City of Fontana*, 818 F.2d 1411, 1416-1417 (9th Cir. 1987).

In California, personal injury claims suffered during life "survive" to a decedent's estate for the purpose of recovering damages awardable personally to the decedent had he or she lived. Cal. Code Civ. Proc. § 377.20. If decedent passed away without leaving a will, the person(s) who succeed to a cause of action are defined in Sections 6401 and 6402 of the California Probate Code. Cal. Code Civ. Proc. § 377.10. If a decedent does not have a surviving spouse or domestic partner, the estate passes to "the issue of the decedent." Cal. Prob. Code § 6402(a). "If there is no surviving issue," the estate passes "to the decedent's parent or parents equally." Cal. Prob. Code § 6402(b).

Here, it is undisputed that decedent is Sheila Walker's son and that decedent has at least two living children. Defendants' motion to dismiss Sharla Walker's survival claim is GRANTED on this ground WITHOUT LEAVE TO AMEND.

2.  <u>Challenge to Remaining Fourth Amendment Survival Action.</u>

The Fourth Amendment provides that "(t)he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

13

violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Defendants argue that Plaintiffs have failed to set forth any facts in the FAC indicating that the decedent's Fourth Amendment rights were violated.

Fourth Amendment claims of excessive force during pretrial detention are evaluated under an objective reasonableness standard. *Lolli*, 351 F.3d at 415 ("[T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."). Here, the FAC simply alleges that Defendants "detained and physically restrained" decedent. FAC ¶6. In their opposition brief, Plaintiffs explain that "[w]here, as here, there was no need for force to detain Mr. Henry during execution of the search warrant, the defendants' use of any force (i.e., physical restraint) is constitutionally unreasonable." Doc. 19 at 4. But, Plaintiffs ignore the circumstances. In executing a search warrant, police officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search. *See Muehler v. Mena*, 544 U.S. 93, 98-100 (2005). This includes detaining the occupants of the house being searched. *Michigan v.*

*Summers*, 452 U.S. 692 (1981). Under *Iqbal*, Plaintiffs must allege facts that plausibly suggest the force used was unreasonable. They have failed to do so.

Defendants' motion to dismiss the remaining fourth amendment survival action is GRANTED on this ground WITH LEAVE TO AMEND.

D. <u>Fourth Claim for Relief -- Negligence.</u>

The Fourth Claim for relief, brought by Sharla M. Walker against all Defendants, entitled "Negligence," alleges that Defendants' acted "negligently" by the manner in which they "responded to and/or terminated the telephone calls of Plaintiff Sharla M. Walker. This amounts to an allegation of negligent infliction of emotional distress. FAC ¶24.

"The law of negligent infliction of emotional distress in California is typically analyzed ... by reference to two 'theories' of recovery: the 'bystander' theory and the 'direct victim' theory." *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1071 (1992). A "bystander" claim can only be maintained by "a plaintiff [who] seeks to recover damages as a percipient witness to the injury of another." *Id*. at 1072. The FAC does not assert a bystander claim.

"Direct victim" claims are analyzed according to the traditional elements of negligence. *See id*. at 1073. Generally, there is "no duty to avoid negligently causing emotional distress to another..." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th

15

965, 984 (1993). The appropriate way to evaluate claims of negligent infliction of emotional distress is as a claim for "negligence, a cause of action in which a duty to the plaintiff is an essential element." *Id*. "That duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Id*. at 985.

> The lesson of these decisions is: unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty. Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests.

*Id*.

Plaintiffs maintain that, under California law, all persons owe a general duty "to use due care to avoid injuring others," citing *Neighbarger v. Irwin Industries, Inc.*, 8 Cal. 4th 532, 535-36 (1994), a case it n which two industrial firefighters alleged they were burned by a petroleum fire that was negligently caused by defendant's employee. Plaintiffs' argument continues:

> Thus, when the defendant officers entered upon the affirmative course of conduct of answering the calls made by Mrs. Walker to the telephones of Mrs. Walker's mother and son, they assumed a duty toward Mrs. Walker to act reasonably so as to avoid injury to Mrs. Walker.
>
> Instead of answering the calls properly by identifying themselves and then stating whether or not Mrs. Walker could speak with her mother or son, the defendant officers merely listened to Mrs. Walker's frightened and frantic pleas to speak with her relatives and obtain aid for her ill son, and then either terminated

16

>             the call without saying anything or terminated the call
>             after falsely identifying themselves as Mrs. Walker's
>             mother.

Doc. 19 at 6-7.

Indeed, all persons do owe a duty of care to ensure that their acts do not cause physical harm to others. *Neighbarger*, 8 Cal. 4th 536. But, this general duty of care does not automatically extend to the emotional well-being of individuals not threatened with physical harm. *See Lawson v. Management Activities, Inc.*, 69 Cal. App. 4th 652 (1999) (refusing to find that operator of airline had a duty to avoid emotionally traumatizing bystanders who viewed plane crash, but were unhurt).

The FAC does not allege that Mrs. Walker was threatened with physical injury or that a duty arises under any other body of law. Defendants' motion to dismiss the negligent infliction of emotional distress claim is GRANTED WITH LEAVE TO AMEND.

E.  <u>Intentional Infliction of Emotional Distress.</u>

Defendants moved to dismiss Plaintiff's Fifth Claim for Relief for Intentional Infliction of Emotional Distress, brought by Sharla M. Walker against all defendants, on the ground that the FAC fails to sufficiently allege the requisite "extreme and outrageous conduct" necessary to maintain an IIED claim. Doc. 20 at 8. The "conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Nally v. Grace Community Church of the Valley*, 47

17

Cal. 3d 278, 300 (1988). While the outrageousness of a defendant's conduct normally presents an issue of fact, a court may determine, in the first instance, as a matter of law, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *See Trerice v. Blue Cross of California,* 209 Cal. App. 3d 878, 883 (1989).

Plaintiffs oppose dismissal on this ground, arguing that Defendants' conduct "toward Mrs. Walker was not only unreasonable, it was sadistic and cruel." Doc. 18 at 7. But, the test is not a subjective one. Here the facts are sparse and do not show animus or other any other basis for the officers to do more than follow search warrant protocol. Plaintiffs must clearly allege why the Officers' behavior was "sadistic" or "cruel," as opposed to a measure taken as part of the normal course of search warrant operations

Defendants' motion to dismiss the intentional infliction of emotional distress claim is GRANTED WITH LEAVE TO AMEND.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss:

(1) the Fourteenth Amendment claim based upon allegedly insufficient medical care is GRANTED WITH LEAVE TO AMEND;

(2) the Fourteenth Amendment claim based on loss of familial association is GRANTED WITH LEAVE TO AMEND;

(3) Sharla M. Walker's survival claim is GRANTED WITHOUT LEAVE TO AMEND;

(4) the remaining fourth amendment survival action is GRANTED WITH LEAVE TO AMEND;

(5) the negligent infliction of emotional distress claim is GRANTED WITH LEAVE TO AMEND;

(6) the intentional infliction of emotional distress claim is GRANTED WITH LEAVE TO AMEND.

SO ORDERED
Dated: February 10, 2010

/s/ Oliver W. Wanger
Oliver W. Wanger
United States District Judge